63 N.J. Super. 233 (1960)
164 A.2d 367
MARKET MAINTENANCE CO., INC., A NEW JERSEY CORPORATION, AND BETTE B. KESSLER, PLAINTIFFS-RESPONDENTS,
v.
CITY OF NEWARK, A MUNICIPAL CORPORATION, DEFENDANT-APPELLANT, AND ROBERT B. MORRISON, TRADING AS ACME FLOOR SERVICE, VICTORY MAINTENANCE CO., INC., A NEW JERSEY CORPORATION, HOME WINDOW CLEANING CO. AND BELLEVILLE WINDOW CLEANING CO., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 26, 1960.
Decided October 17, 1960.
*234 Before Judges CONFORD, FOLEY and LEONARD.
Mr. Jerome L. Kessler argued the cause for plaintiffs-respondents.
Mr. Vincent P. Torppey, Corporation Counsel, argued the cause for the defendant-appellant City of Newark (Mr. Jacob M. Goldberg, on the brief).
The opinion of the court was delivered by FOLEY, J.A.D.
The City of Newark appeals from a judgment of the Law Division restraining it from entering certain building maintenance contracts.
The facts are not in dispute. The city pursuant to N.J.S.A. 40:50-1 advertised for bids for furnishing janitorial maintenance, window cleaning and exterminating services in twenty-four municipal buildings. The proposal sheet submitted to each bidder contained the following language: "Bidder shall submit a bid for each building specified on these proposal sheets"; and "Show cash discount 20 days after submission of invoice." Paragraph 10 of the conditions governing bids provided: "* * *. The Business Administrator reserves the right to award the contract to the lowest bidder in the aggregate, or to the lowest bidders for individual items." The Business Administrator awarded the contracts to the four lowest responsible bidders who are the co-defendants in this case.
Market Maintenance Co., Inc. submitted a lump sum bid of $7,300 per month for a total bid of $87,600 for the work to be performed. The combined bids of four other bidders amounted to $88,219, but two of them having offered discounts *235 in accordance with the bid proposal the net price bid by the four combined became $87,089.47 if accepted by the city on a discount allowance basis. The Business Administrator thereupon accepted the latter bids and forwarded to each of the successful bidders a contract which, in the cases of the two offering the discount, contained a provision binding the city to pay their respective invoices within 20 days of submission. The contracts were not executed because of the intervention of the present action.
In the interest of expedition, plaintiffs' application for restraint was heard summarily by the Law Division which held that the cash discount provision in the bid proposal as above recited was "illegal and invalid because it is uncertain, indefinite and destructive of a common standard requisite to put all bidders on an equal footing; and is in violation of the basic policy of the law of this State as set forth in R.S. 40:50-1," and, more particularly, that the "provision for payment to a bidder within a specified period of time, at a discount he selects, is susceptible to fraud, mistake, inadvertence, negligence, lack of funds, or a variety of other reasons which might cause a breakdown of the City's ability to take advantage of the anticipated discount."
We think it important to point out that at the time this decision was made, the trial court did not have before it proof that in awarding the bids the city accompanied its acceptance with a contract binding itself to pay the net sums of the bids after discount within 20 days of invoice. This fact was developed on the oral argument subsequent to which the city furnished the court with copies of the contracts. These are now made part of the record.
Since a prompt disposition of the case is urgent we find it expedient to take original jurisdiction and to examine the merits of the dispute in light of the expanded record. The problem presented to the trial court was whether a bid proposal which granted the bidders the option of making an offer of discount for payment within 20 days after submission of invoice, and permitted the city: (1) to accept *236 a bid on the basis of the proffered discount, although it would not have been the lowest bid but for the discount; and (2) to award the contract to such bidder but to reserve to itself the right to determine thereafter whether to take advantage of the discount, was so uncertain and fraught with the possibility of fraud, connivance, and discrimination as to be inimical to the legislative purposes reflected by N.J.S.A. 40:50-1. In view of the expanded record we do not have the problem involved in (2) of the stated conditions and express no opinion concerning it.
The contracts submitted to the bidders who offered discounts were in identical form. For example, the contract awarded to Victory Maintenance Co., Inc. includes the following recital:

"Quantity Price
 City Hall Annex  City Hall Alley
 (includes bridge between City Hall Annex
 and the City Hall, also mezzanine offices
 between 3rd & 4th floors) JW for $14,400
 per annum
 Disc. 20 days after submission of invoice
 1% as per attached specifications Total $14,256."

Plaintiff argues that the acceptance of the bid thus stated evinces such a degree of uncertainty in the bid proposal regarding the time when the city would be obligated to make payment as to render the proposal invalid. We disagree. Rather we think that the legend referred to is merely reflective of the exercise by the Business Administrator of his discretion in determining which bid in given circumstances is most advantageous to the city, and so the "lowest" bid. In reaching such determination it might well be that this official, guided by a sound business judgment which embraced, among other things, consideration of the amount of the discount offered, would conclude that the advantage to the city by accepting the lowest net bid calling for early payment outweighed that attaching to the lowest gross bid because of deferment of payment.
*237 So construing the contract in relation to the bid proposal, we are unable to see how it might defeat the salutary purposes of the statute "to secure economy, to prevent fraud, favoritism and extravagance" and to place all bidders "on the same basis in matters material to the proposed municipal action." Rankin v. Board of Education of Egg Harbor Tp., 135 N.J.L. 299, 301 (E. & A. 1946). See also Hillside Township v. Sternin, 25 N.J. 317, 322 (1957); P. Michelotti & Sons, Inc. v. Fair Lawn, 56 N.J. Super. 199, 202 (App. Div. 1959). Instead, we think that the inalterably binding effect of the agreement to pay the discount price within the time specified in the bid effectively served such purposes. While no reported decision is found here or elsewhere which deals with the propriety of an alternative proposal comprehending payment within a specified time period, the mere fact that alternative proposals are sought does not of itself invalidate the bidding. Smith v. Board of Com'rs of Atlantic City, 5 N.J. Misc. 390 (Sup. Ct. 1927), affirmed 104 N.J.L. 143 (E. & A. 1927) (with this question reserved). Accord: Haralson v. City of Dallas, 14 S.W.2d 345 (Tex. Civ. App. 1929); Royal v. City of Des Moines, 195 Iowa 23, 191 N.W. 377 (Sup. Ct. 1923); Davies v. Village of Madelia, 205 Minn. 526, 287 N.W. 1 (Sup. Ct. 1939).
Plaintiff also argues that the specifications in the proposal for bids: "Show cash discount 20 days after submission of invoice" did not apprise the bidders with sufficient clarity that if the city accepted a low bid on the discount basis it would bind itself to pay invoices on that basis. We disagree. Moreover the construction of the proposal contended for by the city is buttressed by its own practical construction of the proposal and by the fact that it bound itself in the actual contract awarded to pay on the discount basis as we held above.
In our opinion the municipality conformed fully with both the letter and spirit of N.J.S.A. 40:50-1 in the circumstances described.
Reversed.